# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CINDY MASSERMAN,
on behalf of herself and
others similarly situated,

        Plaintiff,                                Case No.

v.

                                                       Hon.

LANCESOFT, INC.,

        Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Cindy Masserman ("Plaintiff"), by and through her attorneys,

HURWITZ LAW PLLC, states the following for her Complaint and Jury Demand

against Defendant LanceSoft, Inc., on behalf of herself and others similarly situated.

**INTRODUCTION**

1.      The Defendant staffing company violated Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") when it recruited Plaintiff for a contract position with Blue Cross Blue Shield of Michigan, only to immediately reject her application upon Plaintiff requesting a religious exemption from Defendant's COVID-19 vaccine requirement.   Instead of engaging with Plaintiff in the spirit of "bilateral cooperation," Defendant violated ELCRA by discriminating against her.

**PARTIES AND JURISDICTION**

2.      Plaintiff is an individual residing in Commerce Township, Michigan, which is located in Oakland County.

3.      LanceSoft, Inc. is a staffing agency headquartered in Herndon, Virginia.  Defendant operates services in the State of Michigan.

4.      Plaintiff's claims arise out of Defendant's violation of the Michigan Elliott-Larsen Civil Rights Act of 1976, MCL 37.2101, *et seq.*

5.      This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, a corporation duly organized and existing under the laws of Virginia, and Plaintiff is now, and at all times mentioned was, a citizen domiciled in the United States in the State of Michigan.  Moreover, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2

6.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(e), as it is the district where the Plaintiff resides.  28 U.S.C. § 1391(e).

7.     Plaintiff filed charges of religious and disability discrimination with the Equal Employment Opportunity Commission on May 11, 2022, and will amend her Complaint to allege federal discrimination claims under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000e, *et seq*., once she receives a right to sue letter.

## FACTUAL ALLEGATIONS

### COVID-19 and Defendant's Vaccine Mandate

8.     Defendant is a national employment agency company that recruits applicants and matches them with potential employers.

9.     When recruiting applicants on behalf of Blue Cross Blue Shield of Michigan, Defendant enforces an inflexible vaccine mandate that obligates employees and job-applicants to be vaccinated from COVID-19 regardless of work location, remote status, religious beliefs, or medical accommodation needs.

10.     Defendant's requirement is absolute; it offers no alternative.

### Plaintiff's Employment Application and Religious Accommodation Request

11.     On April 18, 2022, Defendant's recruiter contacted Plaintiff regarding a Nurse Case Manager position with Blue Cross Blue Shield of Michigan.

12.   The Nurse Case Manager position is fully remote – there is no face-to-face contact with patients or employees.

13.   During a phone discussion, the first question this recruiter asked Plaintiff was whether she was vaccinated for COVID-19.

14.   Plaintiff answered honestly and disclosed that she was not.

15.   The recruiter immediately hung up on Plaintiff.

16.   Plaintiff promptly called this recruiter back to ask for clarification.

17.   Plaintiff asked, "Why don't they even entertain a medical exemption or a religious exemption, or accommodation? I applied for a remote position, also."

18.   The recruiter responded, "It's the client requiring, okay, the need for vaccination. That's the thing. Nothing else."

19.   When Plaintiff inquired who Defendant's client was, the recruiter responded, "It's Blue Cross Blue Shield of Michigan."

20.   When Plaintiff asked for the spelling of the recruiter's name, he asked "Can you hear me? I will call you back," then hung up the phone.

21.   The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is

4

appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

22.    "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process — a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

23.    Defendant did not request nor suggest that Plaintiff participate in any discussion to determine a fair and legal accommodation.

24.    Defendant implements a blanket policy to deny all religious and medical accommodation requests.

25.    Defendant never indicated to Plaintiff that accommodating her religious beliefs poses an undue burden.

26.    Defendant denied Plaintiff's employment application without ever engaging in the interactive process.

27.    But-for Plaintiff's vaccination status, she would have been employed by Defendant.

28.    Employees and job applicants must therefore choose vaccination or adverse action.   "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them

to choose between the two most profound obligations they will ever assume—
holding true to their religious commitments and feeding and housing their children.
To many, this is the most horrifying of Hobson's choices." *Sambrano v. United
Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

29.     Defendant failed to explain why Plaintiff's religious accommodation
request was never considered – it simply stated that its client, Blue Cross Blue Shield
of Michigan, required all employees to be vaccinated.

30.     In fact, Blue Cross Blue Shield of Michigan does not require its
employees to be vaccinated.

31.     Blue Cross Blue Shield of Michigan grants religious and medical
accommodations to its employees that allows them to remain unvaccinated.

32.     Defendant has no "satisfactory explanation for its action including a
'rational connection between the facts found and the choice made.'" *Burlington
Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

33.     The risk of Plaintiff spreading or contracting COVID-19 through the
nature of her employment is non-existent because the role is fully remote.

## CLASS ACTION ALLEGATIONS

34.     Plaintiffs assert claims on behalf of the "Putative Class," defined as
follows:

> **Class:** All individuals residing in Michigan who were
> denied employment because their sincerely held religious

6

beliefs or medical condition precluded them from receiving the COVID-19 vaccine.

35. **Numerosity.** The Putative Class is so numerous that joinder of all Class members is impracticable.

36. **Typicality.** Plaintiff's claims are typical of the members of the Putative Class. For all members of the Putative Class, Defendant did not conduct an individualized assessment of potential employees' religious accommodation requests before deciding not to consider them for employment. Instead, Defendant imposed a policy blanketly denying employment to any potential new hire who would require accommodation from its COVID-19 vaccine mandate. The legal violation suffered by the Plaintiff is typical to those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

37. **Adequacy.** Plaintiff is an adequate representative of the Putative Class. Plaintiff's interests are aligned with, and are not antagonistic to, the interests of the members of the Putative Class. Plaintiff has retained counsel competent and experienced in complex class action litigation.

38. **Commonality.** Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

a.      Whether Defendant imposed a blanket policy denying employment to any potential new hire that required religious or medical accommodation from its COVID-19 vaccine mandate;

b.      Whether Defendant violated ELCRA by failing to consider whether members of the Putative Class needed religious or medical accommodation;

c.      Whether Defendant violated ELCRA by failing to consider whether there were reasonable accommodations for members of the Putative Class that would not pose an undue burden on Defendant.

d.      Whether Defendant refused to hire anyone who required religious accommodation to its COVID-19 mandate.

e.      The proper statutory and punitive damages; and

f.      The proper form of declaratory relief.

39.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant.  Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a part to such action, impeding their ability to protect their interests.

40.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds that apply generally to the Putative Classes, so that relief is appropriate respecting the Class as a whole.

41.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods of the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of ELCRA.  Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Putative Class on an individual basis.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

42.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendant's records.

**COUNT I**
**Violation of the ELCRA, MCL 37.2101, *et seq*.**
**<u>Religious Discrimination – Failure and Refusal to Hire</u>**
**(on behalf of Plaintiff and others similarly situated)**

43.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

44.     Pursuant to ELCRA, MCL 37.2202(1) it is unlawful for an employer to: "(a) <u>Fail or refuse to hire or recruit</u>, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion[.]; or (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion[.]"

45.     Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

46.     Simply by failing to engage with Plaintiff as to the possible reasonable accommodations, Defendant has violated the law.

47.     Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

48.     Defendant responded by immediately rejecting her application of employment.

49.     Defendant failed and refused to hire Plaintiff due to its unlawful vaccine mandate that did not permit for accommodation.

50.     Plaintiff's religious beliefs and protected activity were the causes of Defendant's retaliation and adverse employment action.

51.     This violation has harmed and continues to harm Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a.     Declare that Defendant has violated ELCRA by failing to engage in the interactive process in response to requests for accommodation to its COVID-19 vaccine mandate.

b.     Declare that Defendant has violated ELCRA by discriminating against Plaintiff and others similarly situated to her by refusing to hire any unvaccinated employees requiring religious or medical accommodations.

c.     Award Plaintiff and others similarly situated to her damages, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

d.     Award Plaintiff and others similarly situated to her reasonable attorneys' fees and costs.

e.     Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
*noah@hurwitzlaw.com*

Dated: September 9, 2022

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CINDY MASSERMAN,
on behalf of herself and
others similarly situated,

       Plaintiff,                Case No.

v.

                                      Hon.

LANCESOFT, INC.,

       Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

       Plaintiff, Cindy Masserman, by and through her attorneys, Hurwitz Law

PLLC, hereby demands a jury trial in the above-captioned matter for all issues

triable.

                                   Respectfully Submitted,
                                    HURWITZ LAW PLLC

                                    */s/  Noah S. Hurwitz*
                                    Noah S. Hurwitz (P74063)

*Attorney for Plaintiff*

Dated: September 9, 2022